IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **VANESSA EVANS-RHODES** | § | |
| | § | |
| *Plaintiff*, | § | **C.A. NO.** |
| | § | |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| **NORTHWEST DIAGNOSTIC CLINIC, P.A.** | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW PLAINTIFF VANESSA EVANS-RHODES (hereinafter "Evans-Rhodes" or "Plaintiff") and brings this suit against and complains of NORTHWEST DIAGNOSTIC CLINIC, P.A. (hereinafter "Northwest" or "Defendant"). Plaintiff complains with respect to discrimination, hostile work environment, and retaliation in the employment context that ultimately led to Plaintiff's termination. For good cause, Plaintiff would show unto the Court as follows:

**A.    PARTIES**

1.    Plaintiff Vanessa Evans-Rhodes is an individual, who is a citizen of the State of Texas.

2.    Defendant Northwest Diagnostic Clinic, P.A. is a domestic for-profit corporation that has been served through its registered agent John Watson at 1140 Cypress Station Drive, Suite 105, Houston, Texas  77090 or wherever he may be found.

### B. JURISDICTION AND VENUE

3. This action arises under the laws of the United States, specifically 42 U.S.C. § 1981. Accordingly, this Court has jurisdiction over the subject matter of this suit pursuant to 28 U.S.C. § 1331.

4. Plaintiff originally filed her case with respect to the race discrimination and retaliation causes of action under Title VII and 42 U.S.C. § 1981 and hostile work environment under Title VII.

5. Plaintiff has elected to file this action for race discrimination, retaliation, and hostile work environment solely under 42 U.S.C. § 1981.

### C. STATEMENT OF FACTS

6. Plaintiff Vanessa Evans-Rhodes is an African American female who was employed with Northwest from on or about January 4, 2011 through June 7, 2011. Plaintiff was hired as a Healthcare Coding Specialist/Auditor.

7. Plaintiff was well versed and experienced in working as a Healthcare Coding Specialist/Auditor.

8. Plaintiff's supervisor was the Director of Network Operations, Pam Audish, a Caucasian female. At the time of Ms. Evans-Rhodes' hire, she explained that she had a second job and would need a flexible schedule. Ms. Audish agreed to Ms. Evans-Rhodes' flexible schedule.

9. At the inception of the working relationship it quickly became evident that Plaintiff's Caucasian co-worker, Sonya Taylor, the Quality Improvement Specialist, exhibited a different standard of treatment toward non-African American employees. For example, Sonya Taylor spoke to Plaintiff and another African American in a demeaning manner, often questioned Ms. Evans-Rhodes' work, and generally treated her and her African American co-worker as if they

were inferior. At the same time, Ms. Sonya Taylor treated non-African American co-workers in a preferential manner.

10. During Plaintiff's employment, Ms. Audish allowed her co-worker Sonya Taylor to begin supervising Plaintiff and another African American co-worker, Ms. Georgia Johnson. Despite the fact, that Ms. Taylor was simply a co-worker and not situated in a position with actual supervisory authority over Plaintiff and Ms. Johnson's positions, Sonya Taylor was allowed to require Plaintiff and her African American counter-part, Ms. Johnson, to give her full access to their calendars so that she could track and monitor their work load and general whereabouts. At the same time, Ms. Taylor was not granted the same supervisory authority over the non-African American co-workers and nor was Sonya Taylor required to give Plaintiff and her African American counter-part, Ms. Johnson, access to her calendar.

11. Ms. Sonya Taylor (Caucasian) belittled Ms. Evans-Rhodes in front of her co-workers. Ms. Taylor frequently spoke down to Ms. Evans-Rhodes as if she were less than her. Ms. Sonya Taylor's comments had overtones of racism.

12. According to a witness, Ms. Amy Hullett, who was employed during the same time in which Ms. Evans-Rhodes was employed at Northwest Diagnostic Clinic, P.A., it was clear that Ms. Vanessa Evans-Rhodes was treated more harshly than the Caucasian employees. Ms. Hullett also testified that there were white/black issues. For example, "white was considered right", meaning if you were black, you were always in the wrong. There was also the "black people don't take care of their bodies" comment.

13. On or about June 2, 2011, Sonya Taylor made a racially discriminatory comment towards African Americans directly to Plaintiff. Specifically, during a discussion regarding weight, Ms. Taylor stated that she was analyzing her weight by "white people's standards" and Plaintiff

would not understand because she was African American.

14. The racially derogatory comment regarding African Americans was the proverbial last straw for Plaintiff.

15. Plaintiff could no longer tolerate Sonya Taylor's treatment towards her as an African American as well as the discriminatory comment regarding African Americans spoken directly to her. Therefore, Plaintiff immediately complained to her supervisor Ms. Pam Audish about Ms. Sonya Taylor's discriminatory and harassing behavior towards her including but not limited to the demeaning manner in which she addressed Plaintiff, her implication that Plaintiff was inferior, and her racially derogatory comment.

16. Ms. Audish responded to Plaintiff that prior to making such a complaint that Plaintiff needed to sleep on it, implying that she needed to really think about whether or not she truly wanted to lodge such a complaint. Ms. Evans-Rhodes took this ultimatum as a threat so that she would not complain. Further, Ms. Audish also stated that she was off from work and did not have time to deal with Plaintiff's complaint.

17. After being denied the opportunity to make her complaint of discrimination and harassing behavior to her direct supervisor, Ms. Audish, on June 2, 2011, Plaintiff complained to Kim Taylor, the Human Resource Director, about Sonya Taylor's discriminatory and harassing behavior towards her as well as the racially derogatory comment that she made directly to Plaintiff.

18. At the time that Plaintiff attempted to lodge her complaint with her supervisor, Ms. Audish as well as Kim Taylor, the Human Resource Director, Plaintiff had a reasonable good faith belief that Sonya Taylor's discriminatory behavior towards her as an African American employee and the racially discriminatory comment made directly to her was unlawful and illegal

in the workplace. Among other complaints, Plaintiff reported the demeaning manner in which Ms. Taylor spoke to her and how she treated her as if she were inferior and incompetent as reflected in Defendant's Human Resource Director's notes documenting Plaintiff's complaints.

19.     Plaintiff continued to make complaints to human resources.  On June 3, 2011, Ms. Evans-Rhodes entitled her email as "retaliation"; Plaintiff described that her legitimate "racial concern", was responded to by Ms. Audish in the form of an ultimatum, denial of time off to see her son graduate, and "elevated issues"; Plaintiff indeed opposed race discrimination in good faith.[1]  See Exhibit A, June 3, 2011 Email to Human Resources.

20.     Immediately following Plaintiff's complaints of discrimination to her supervisor and the Director of Human Resources on June 2, 2011 and June 3, 2011 about what she believed to be unlawful discrimination in the workplace, Plaintiff became a victim of retaliation on June 6, 2011.

21.     In retaliation for her complaints of racial discrimination against Ms. Sonya Taylor, Ms. Audish issued Plaintiff a written reprimand for taking too much time off.  Specifically, Ms. Audish and the company's general counsel, Mr. Jonathan Ishee had a rather intimidating conversation with Plaintiff in which she was accused of being a bad employee because of her absences.  This was disconcerting to Plaintiff as prior to her employment she had made it abundantly clear to Ms. Audish that she needed a flexible schedule because she also had a second job.

22.     Further, instead of addressing and investigating Plaintiff's complaint, her supervisor, Ms. Audish, allowed Sonya Taylor to have free reign to supervise her.  Specifically, although not her supervisor, Ms. Taylor was allowed to take away Ms. Evans-Rhodes' auditing duties until further

---

[1] See *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (plaintiff engaged in protected activity on if he had at least reasonable belief that the practices he opposed were unlawful).

notice which directly altered the conditions of Ms. Evans-Rhodes' employment. Ms. Evans-Rhodes' complaints had essentially fallen upon deaf ears.

23. As a concerted effort to discredit Ms. Evans-Rhodes, Ms. Sonya Taylor sent an email to Ms. Amy Hullett stating that Plaintiff along with another African American co-worker, Ms. Georgia Johnson were incompetent and were incapable of performing their jobs, which created an abusive working environment.

24. Ridiculing and insulting Ms. Evans-Rhodes in furtherance of the hostile work environment, Ms. Taylor had all of Ms. Evans-Rhodes' work as well as Ms. Georgia Johnson's work shredded because she considered it "trash". Ms. Audish and Ms. Taylor both continued to make Ms. Evans-Rhodes work environment hostile and untenable and did so on a daily and persistent basis. Ms. Kim Taylor, the Director of Human Resources knew of the hostile work environment and did nothing to stop the behavior. This inactivity encouraged Ms. Audish and Ms. Sonya Taylor's behavior towards Ms. Evans-Rhodes which led to the adverse treatment.

25. Moreover, following Plaintiff's complaint concerning Ms. Sonya Taylor's discriminatory treatment and comment, Ms. Audish moved Plaintiff to another cubicle near Ms. Amy Hullett, the Sr. Provider Relations employee for Defendant. However, Ms. Audish specifically instructed Ms. Hullett to not talk to Ms. Evans-Rhodes or at least to keep it to a minimum.

26. According to Ms. Hullett, the witness, prior to Plaintiff being moved to her area, Ms. Pam Audish rarely visited that area of the office; however, after she moved Plaintiff to that area, Ms. Audish visited that area numerous times per day. Further, Ms. Hullett stated that Ms. Audish's various comments and actions about Plaintiff were the direct result of Plaintiff's complaint about the discrimination.

27. On June 7, 2013, just days following her complaints of discrimination and of racial

harassment, Plaintiff was terminated, the ultimate form of retaliation. Defendant claims that Ms. Audish was terminated for eating at her desk, but according to Ms. Hullett, an eye witness that was present at the time, Ms. Evans-Rhodes was not eating anything at her desk, but was actually simply working. Ms. Hullett stated that Ms. Audish approached Plaintiff in a really "ugly accusatory manner". Ms. Audish yelled at Plaintiff: "Leave, Leave NOW, before I go get H.R.!". Plaintiff was terminated because she complained about Ms. Taylor's racially discriminatory treatment and racially derogatory statement towards her. Ironically, immediately after Plaintiff was terminated, Ms. Audish stopped visiting that area numerous times per day.

28. Following her termination, Plaintiff filed a Charge of Discrimination/Retaliation with the Equal Employment Opportunity Commission.

29. Subsequent to the EEOC's investigation, the EEOC made a Determination of Retaliation in favor of Plaintiff.

### D. CAUSES OF ACTION

### Count No. 1-Racial Discrimination and Retaliation Under
### Reconstruction Civil Rights Acts, 42 U.S.C. § 1981

30. Plaintiff repeats and re-alleges paragraphs 1 through 29 with the same force and effect as though fully set forth herein.

31. Ms. Evans-Rhodes was the victim of race discrimination, her supervisor allowed her co-worker to demean her and treat her in an inferior manner. Without background work and knowledge as a coding specialist, Ms. Sonya Taylor often questioned Ms. Evans-Rhodes' work as a coding specialist. Ms. Sonya Taylor shredded Ms. Evans-Rhodes' work, coining it trash. She referred to Ms. Evans-Rhodes as incompetent, but never any non-African American employee as incompetent. Witness testimony demonstrates that there was a white/black issue

and white was right. Such an environment was in line with Ms. Sonya Taylor's racially derogatory comment to Ms. Evans-Rhodes that she could not nearly comprehend white people's standards as she was African American. Ms. Taylor truly behaved as if she was better than Ms. Evans-Rhodes because she was Caucasian and Ms. Evans-Rhodes was African American. As the racial tension was ever escalating, Ms. Evans-Rhodes had no other option than to complain.

32.     Defendant's intentional racial discrimination against Plaintiff as well as the pattern and practice of this are in violation of the Reconstruction Civil Rights Acts, 42 U.S.C. § 1981. Defendant's retaliation against Plaintiff as well as the pattern and practice of this are in violation of the Reconstruction Civil Rights Acts, 42 U.S.C. § 1981. Such discrimination and retaliation has caused Plaintiff to suffer damages of severe emotional distress, lost wages, including raises, retirement benefits, loss of promotion, and other benefits associated as Plaintiff has been subjected to adverse employment actions as a result of the discrimination and retaliation.

33.     According to witness Amy Hullett, she was aware that prior to Plaintiff's termination, she had submitted a complaint regarding discrimination and that afterwards, Ms. Audish, the supervisor, moved Plaintiff to another area close to Ms. Hullett. Ms. Hullet was instructed not to talk to Plaintiff or to keep the conversation to a minimum. Ms. Sonya Taylor wrote an email regarding Plaintiff and another African American female, that they were incompetent and not capable of doing their jobs. Ultimately, Ms. Evans-Rhodes was terminated for violating a policy that she did not violate. Ms. Audish yelled at Ms. Evans-Rhodes to "LEAVE!!" Therefore, she was retaliated against for the exercise of her rights under federal civil rights statutes.

34.     Such discrimination and retaliation was committed with malice and reckless indifference to the rights of Plaintiff and other racial minorities to "have the same right…to make and enforce contracts… as is enjoyed by other citizens" and to the intent of the statute to protect victims from

unequal treatment. In addition, Plaintiff avers that Defendant's unlawful race discrimination and retaliatory actions of termination was because she had reported and opposed the ongoing discrimination. Such malicious or reckless indifference warrants an award, *inter alia*, of compensatory and punitive damages, as are authorized by law for 42 U.S.C. § 1981 violations.

35. Plaintiff has been denied opportunities to which she was entitled and such benefits and privileges that she would have received if she had not been intentionally discriminated and retaliated against by Defendant. Plaintiff is now suffering and will continue to suffer past and future pecuniary losses, emotional and physical pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. These irreparable injuries and monetary damages are the result of Defendant's retaliatory practices and they will continue unless and until this Court grants relief.

## **Count No. 2-Hostile Work Environment Under 42 U.S.C. § 1981**

36. Plaintiff repeats and re-alleges paragraphs 1 through 35 with the same force and effect as though fully set forth herein.

37. Plaintiff was subjected to a hostile work environment based upon her race. She belongs to a protected class, African American, she was subject to unwelcome harassment, the harassment was based upon her membership in the protected class, the harassment affected a term, condition or privilege of their employment and Northwest knew or should have known of the harassment and failed to take prompt remedial action. Defendant's treatment of Plaintiff, including but not limited to speaking in a demeaning manner to her, advising Plaintiff that she was analyzing her weight by "white people's standards and Plaintiff would not understand because she was African American", Defendant's reaction to Plaintiff's complaints, her supervisor's threat to Plaintiff after she complained, and subsequent reprimand of Plaintiff with

the company attorney present to intimidate her, all of which are a part of the racially discriminatory intimidation, the same sort of intimidation that warrants a hostile work environment claim.

38. Moreover, Plaintiff's key duties were removed by the very person that she complained about, Ms. Sonya Taylor. Ms. Taylor did not have a medical coding background, yet she ridiculed Ms. Evans-Rhodes' work and spoke down to her as if she did not know what she was doing. Ms. Audish moved Plaintiff to another area and instructed the other employee near her not to talk to Plaintiff, as to alienate Plaintiff. Further, under constant scrutiny, Ms. Evans-Rhodes observed her supervisor visit her new area numerous times a day, when prior, this had been an area that she rarely ventured into during the day. Additionally, Ms. Audish misrepresented that Ms. Evans-Rhodes was eating at her desk in order to terminate her. Per an eye witness, Ms. Amy Hullett, there was no food in sight. Ms. Audish crouched down to the level of yelling at Ms. Evans-Rhodes to "LEAVE!!" This harassment affected a term, condition, or privilege of the Plaintiff's employment, in that it was sufficiently severe or pervasive to create a work environment that is both subjectively and objectively abusive, i.e., one that Plaintiff perceived as abusive and one that a reasonable person would find hostile or abusive.

### E.  DEMAND FOR A JURY

35. Plaintiff demands a jury trial.

### F.  DAMAGES

36. Plaintiff is entitled to an award of actual and compensatory damages in an amount that exceeds the minimum jurisdictional limits of this Court. These include her past and future loss of higher wages, raises, and or bonuses. Plaintiff also seeks an award of damages for her mental anguish and the losses she has suffered and continues to suffer.

37. Further, because the Defendant's acts and omissions were committed with malice and/or with reckless disregard of the consequences, they justify the imposition of exemplary damages in addition to the compensatory damages to which Plaintiff is entitled.  A reasonable amount for exemplary damages in this case should take into consideration the need to deter future conduct of this type.

38. Plaintiff also seeks compensation for the out-of-pocket expenses, attorney's fees, and costs of Court she will have incurred in this action.

39. Plaintiff believes that a jury should put a dollar value on these damages after it hears the evidence.

## G. PRAYER

40. For these reasons, Plaintiff Vanessa Evans-Rhodes prays that Defendant be cited to appear and answer herein and that this case be advanced for trial before a jury, and that on final hearing this Court grant the following relief:

   a) An award of reasonable attorney's fees and the cost and expenses related to the litigation of this claim;

   b) Loss of earnings sustained by Plaintiff from date of discrimination and retaliation to date of trial;

   c) Loss of earning and earning capacity reasonably anticipated to be suffered by Plaintiff in the future;

   d) Mental anguish, embarrassment, inconvenience, pain and suffering sustained by Plaintiff from the date they were discriminated against to the end of trial;

   e) Mental anguish, embarrassment, inconvenience, pain and suffering reasonably anticipated to be suffered by Plaintiff in the future;

f)   Actual damages suffered by Plaintiff, past and future;

g)   Past and future medical expenses;

h)   Punitive and exemplary damages; and

i)   Pre-judgment interest at the highest rate allowed by law;

j)   Post-judgment interest at the highest rate allowed by law;

k)   A judgment against the Defendant for compensatory damages; and

l)   Such other relief, legal or equitable, as may be warranted.

Respectfully submitted:

**MOORE & ASSOCIATES**

By: /s/ Melissa Moore
Melissa Moore
State Bar No. 24013189
Rochelle Owens
State Bar No. 24048704
Lyric Centre
440 Louisiana, Suite 675
Houston, Texas  77002
Telephone: 713.222.6775
Facsimile: 713.222.6739

**ATTORNEYS FOR PLAINTIFF**